## Fetrow's Estate.

1. Devise to Matilda " during her natural life, and at her death I give, &c., the same unto her children, their heirs and assigns for ever. * * Should the said Matilda die without issue as aforesaid, then and in that event I direct that the real estate bequeathed to her as aforesaid shall be sold, and the proceeds thereof I direct shall be equally divided amongst the other devisees named in this my last will or their legal representatives." Matilda died after the testator without children. *Held*, that she took an estate for life with contingent remainder to her children then unborn, which would have vested in them, in the first child alone, and opening from time to time to let in others as they were born. The subsequent limitation was an alternative one to take effect on her death without children.

2. In doubtful cases, it is safest to adhere to the technical meaning of words, on the primary presumption that the testator used them in that sense; but this rule must yield when it appears he used them in their popular sense.

3. " To be equally divided amongst the other devisees named in this my last will or their legal representatives," construed, and applied in an obscure will.

May 7th 1868. Before THOMPSON, C. J., STRONG, READ, AGNEW and SHARSWOOD, JJ.

Appeal from the Orphans' Court of *York county:* Of May Term 1868.

This appeal arose upon the distribution of the estate of Joshua Fetrow, deceased.

Joshua Fetrow, by his will, devised "unto Matilda Wilson, during her natural life," certain real estate, describing it "to have and to ·hold the four described properties, and keep them in good repair during her life, and at her death I give, devise and bequeath the same unto her children, their heirs and assigns for ever." * * * "Should the said Matilda Wilson, however, die without issue as aforesaid, then, and in that event, I direct that the real estate herein bequeathed to her as aforesaid shall be sold, and the proceeds thereof I direct shall be equally divided amongst the other devisees named in this my last will, or their legal representatives." He further provided: " I give, devise and bequeath to Michael Fetrow," &c., "during his natural life, the tract of land," &c. "He, the said Michael Fetrow, to have and hold the same, and keep said land and fences in order during his natural life, and at his death I give and devise the same unto his children in equal shares, with this provision, that they shall pay unto the other devisees one-third of the valuation of said tract of land. In case the said Michael Fetrow shall have no children at his death, then the said tract of land shall be sold, and the proceeds thereof divided among the surviving devisees, named in this will, in equal shares.

" I give, devise and bequeath unto Lucinda Dietz, during ·her natural life, the house, &c.; she to have and hold the same and

[Fetrow's Estate.]

keep it in repair during her natural life, and at her death the same to be sold and the proceeds thereof to be equally divided among the surviving devisees named in this will, or their legal representatives.

"I give, devise and bequeath unto Henry Fetrow and his wife my tract, &c., during their natural lives, and at the death of the survivor of them I direct that the same shall be sold and the proceeds thereof divided among their children in equal shares. In case I shall dispose of said tract of land in my lifetime, I direct that the sum of $400 shall be placed at interest, and the interest thereof shall be paid to them, and at the death of the survivor of them I direct that the principal shall be equally divided among their children.

"I give, devise and bequeath unto my sister, Elizabeth Borland, the interest of the sum of $400, &c., and at her death I give and bequeath the principal unto her son, John Borland.

"I give, devise and bequeath unto the children of my deceased sister, Catharine Weyer, the sum of $400, to be equally divided among them.

"I give, devise and bequeath unto Emanuel Small the sum of $400.

"I give, devise and bequeath unto Lucinda Dietz the sum of $400.

"I give, devise and bequeath unto Jacob Luttman the sum of $400.

"I direct that my household, and agricultural business and interests shall be attended to, &c., until the first harvest after my decease shall be gathered and converted into money, when the whole of my stock and personal property, of whatsoever nature or kind the same may be, shall be sold and converted into money, and shall be equally divided among the foregoing named devisees, viz.: Matilda Wilson and her heirs, John Borland and his heirs, one share to the children of my deceased sister Catharine, one share to Henry Fetrow's heirs, one share to Emanuel Small or his heirs, one share to Jacob Luttman or his heirs, and one share to Lucinda Dietz and her heirs; or in case of the death of any of the foregoing devisees without issue, then the share of such to be equally divided among the survivors."

Matilda Wilson, the devisee, died without children. After her death the real estate devised to her was sold; its proceeds are the fund for distribution, and amount to $14,971.70.

The questions raised were,

1. Whether the fund should go to those only who took real estate under the will, construing "devisee" with strict technicality.

2. Whether it should go by classes to those only named in the last clause of the will.

3. Whether it should go to all the beneficiaries under the will.

[Fetrow's Estate.]

4. Whether, on the death of Matilda Wilson without children, the real estate devised to her was not intestate property, and should go to the testator's heirs at law.

The auditor, C. B. Wallace, Esq., distributed the fund amongst all the beneficiaries under the will, treating Catharine Weyer, deceased, as one of the beneficiaries, and dividing her share amongst her children.

Lucinda Dietz (now Rutter), Jacob Luttman, the administrator of Emanuel Small,—Michael Fetrow,—Henry Fetrow and wife, and the heirs at law of the testator filed, exceptions to the report. The Orphans' Court dismissed the exceptions, and confirmed the report. The exceptors appealed to the Supreme Court, and assigned the confirmation of the report for error.

*J. Gibson* and *E. H. Weiser*, for Fetrows and Dietz (Rutter), appellants, cited Still *v.* Spear, 9 Wright 168; 2 Redf. on Wills 428; 1 Id. 5, 6; Porter's Appeal, 9 Wright 207; Auman *v.* Auman, 9 Harris 343; Chew's Appeal, 1 Wright 23.

*V. K. Keesey*, for Luttman and Small, appellants, cited Wharton's Law Lex.; Jacob's Law Dict.; Tomlin's Law Dict.; and Worcester's Dict., "Devise;" 1 Redf. on Wills, *supra;* Dow *v.* Dow, 36 Maine 211; Ladd *v.* Harvey, 1 Foster 514; Holmes *v.* Mitchel, 2 Murphy 228; Fissel's Appeal, 3 Casey 55; Jessup *v.* Smuck, 4 Harris 327.

*J. L. Mayer*, for heirs at law, cited Caldwell *v.* Skilton, 1 Harris 152; Schoonmaker *v.* Stockton, 1 Wright 461; Stehman's Appeal, 9 Id. 398.

*J. Kell* and *T. E. Cochran*, for appellees: 2 Jarman on Wills 526, 527, Rule 16, 22; 2 Jacob's Law Dict. 273; Bouv. Law Dict. 463, "Devise;" 2 Id. 19, "Legacy;" Hardacre *v.* Nash, 5 T. R. 716; Hope *v.* Taylor, 1 Burr. 268; Nannock *v.* Horton, 7 Ves. 391; Sibley *v.* Perry, Id. 522; Homer *v.* Shelton, 2 Metc. (Mass.) 199; Smith *v.* Bell, 6 Pet. 75, 84 : Porter's Appeal, *supra*.

The opinion of the court was delivered, May 14th 1868, by

SHARSWOOD, J.—We have before us a very inartificially-drawn will, from which we are to gather the intention of the testator as far as it can be from the four corners of the instrument itself. It often happens that an unskilful scrivener, who uses technical words and legal phrases, creates more difficulty than would the unlearned testator himself had he employed his own simple language to express his meaning.

The first gift is that out of which this contest has arisen, It

[Fetrow's Estate.]

gives to Matilda Wilson during her natural life several pieces of real estate, and at her death to her children, their heirs and assigns for ever. "Should the said Matilda Wilson, however, die without issue, as aforesaid, then, in that event, I direct that the real estate herein bequeathed shall be sold, and the proceeds thereof I direct shall be equally divided amongst the other devisees named in this my last will, or their legal representatives." Matilda Wilson died without children. The real estate thus given to her has been sold, and the question in the court below and now here, is as to the distribution of the proceeds.

Matilda Wilson under the will took an estate for life, with a contingent remainder to her children then unborn, which, if there had been children, would have vested in them, in the first child alone, and opening from time to time to let in others as they were born, until the whole class became finally ascertained by her death: 1 Fearne on Rem. 313, 314. The subsequent limitation was an alternative one, to take effect on the event of her death without children: Luddington v. Kime, 1 Lord Raym. 203; for the words "die without issue as aforesaid" can have no other meaning. It has been suggested, indeed, that the testator intended to confine the death of Matilda without children to his own lifetime, and that his only object was to provide for a lapse. The consequence would be that as Matilda survived the testator the alternative limitation or direction to sell and divide the proceeds would fall, and the testator die intestate as to this portion of his property. There is nothing, however, in the words or context to sustain such a construction. The testator sets out with a declared intention to dispose of all his worldly estate, and the general presumption is against a partial intestacy. The question indeed is not properly involved in this case: for the fund having been raised by the exercise of the power, we have nothing to do with any other question than the distribution of it. A learned and able argument, however, has been addressed to us by counsel who has appeared on behalf of the heirs at law, and it is but respectful to him to notice the point.

Who are the devisees named in the will, among whom the testator has directed these proceeds to be equally divided? It is contended that he used the word "devisees" in its legal sense as those to whom real estate was given. In propriety of language the word "devise" means a testamentary disposition of land, while "legacy" or "bequest" are words appropriated to such dispositions of personalty. It is certainly an established canon of construction that in doubtful cases it is safest to adhere to the technical meaning of words on the primary presumption that the testator used them in that sense: Still v. Spear, 9 Wright 168. But this rule, like all others, must give way where it clearly ap-

[Fetrow's Estate.]

pears that he understood and used them in a more popular sense. It is apparent that such was the case in this will. There are eleven items before the residuary clause. In nine of them he applies the words "give, devise and bequeath" without discrimination to dispositions of realty and personalty. When he comes to dispose of his "stock and personal property" he directs it to "be equally divided among the foregoing named devisees," and then proceeds to designate them by name, including in the list five persons or classes of persons, who were mere legatees of money. In view of so clear an indication of his understanding of the word "devisees," we must reject the construction which confines the distribution of this fund to those only to whom land is devised.

The construction on the other hand which appears to have been adopted by the auditor and confirmed by the court below, seems to us, as near as may be, to carry into effect the intention of the testator. It compares the specific bequests and devises in the will with his own enumeration of devisees in the residuary clause, and thence draws the inference that he had arranged the objects of his bounty in classes. He meant primarily by "the other devisees named or their legal representatives," those to whom he had made devises or bequests directly by name, whether for life or in remainder, and intended to include the "heirs or children" with their parents in the shares given to them. This would be plain enough, if it stood upon the items of the will without the enumeration contained in the residuary clause. When he divided by that his personal property among "the foregoing named devisees," he certainly did not mean all, for he has not given to Michael Fetrow a separate share, and has omitted his sister Elizabeth Borland altogether. I incline to think that the residuary clause should be construed as if it had been written "to the following of my foregoing named devisees"; and that the direction as to the fund in question should be restricted to the devisees named in the will irrespective of the list there given. The testator had his specific legatees and devisees in his mind, and not the disposition he intended to make of the residue. This removes the residuary clause entirely as a disturbing element in the construction.

Appeal dismissed and decree affirmed, at the costs of the appellants.