## Edwards Estate.

Argued October 4, 1948. Before MAXEY, C. J. DREW, LINN, PATTERSON, STEARNE and JONES, JJ.

*Thomas N. Griggs,* with him *M. Barney Cohen, Griggs, Moreland, Blair & Douglass* and *Mancill, Cooney, Ott & Semans,* for appellants.

*Frank W. Ittel,* with him *David B. Buerger, Smith Buchanan & Ingersoll, John W. Wishart* and *Reed, Smith, Shaw & McClay,* for appellee.

OPINION BY MR. JUSTICE PATTERSON, November 16, 1948:

These appeals are from a decree entered by the Orphans' Court of Allegheny County in the estate of Eliza Thaw Edwards, deceased.

Testatrix died May 13, 1912, leaving a will and two codicils, all holographic. The provisions here material occur on the first and fourth pages of the will and in the second codicil. They are as follows: on page 1, "There is to be no immediate division of my estate, but each one of my four daughters shall share equally of its income after certain bequests are made"; on page 4, "When estate is divided, two years after my death, all Bonds, Stocks, Money in Banks etc. shall be divided share and share alike, except the part in Trust [referring to a fund over which testatrix had power of appointment under the will of her father, William Thaw, deceased] . . . The part of estate now in Trust shall be kept where it now is, or in some Trust approved by the two first executors . . . When the life interest of the present heirs expires, that which is in Trust shall go to my grandchil-

dren"; in the second codicil, "And on the 4th page where it directs divisions of estate accumulated from income during my life time, I wish half of that added to the present amount in Trust, each daughter to have equal share of income from same, and at the death of each, her share shall continue in Trust for my grandchildren."

Surviving testatrix were four daughters, Burd B. E. Dickson, wife of Charles E. Dickson, Katherine M. Edwards, Eliza T. Edwards and Mary L. Edwards, and five grandchildren, the children of Burd B. E. and Charles E. Dickson. One of the five grandchildren, Eliza T. Dickson, a minor, died on April 16, 1914, intestate, unmarried and without issue, and three of testatrix's daughters, Burd B. E. Dickson, Eliza T. Edwards and Mary L. Edwards have since died. No additional grandchildren of testatrix were born after her death.

At the audit of the fourth account of the trustees under testatrix's will, occasioned by the death of Charles E. Dickson, one of the co-trustees, on June 15, 1945, and the death of Mary L. Edwards, one of testatrix's daughters, on November 24, 1945, Peoples-Pittsburgh Trust Company (now Peoples First National Bank and Trust Company), executor and trustee under Dickson's will, claimed one-tenth of the balance shown by the account, contending that the gift in remainder vested in the grandchildren, as a class, including Eliza T. Dickson, the deceased grandchild; that upon her death, Burd B. E. Dickson and Charles E. Dickson, her parents and heirs at law, became the owners of her one-fifth remainder interest; and that upon the death of his wife Charles E. Dickson became the sole owner as surviving tenant by the entirety. This was contested by the four surviving grandchildren, George E. Dickson, T. Bruce Dickson, Burd D. Stevenson and Mary Dickson Varker, who contended that the remainders are contingent upon the remaindermen being in existence either two years after testatrix's death, or at the death of the first of testatrix's daughters to die, or at the successive deaths of testa-

trix's daughters. The auditing judge sustained the claim and awarded the balance, amounting to $740,389.32, one-half to the trustees for Katherine M. Edwards under the will, one-tenth to each of the four surviving grandchildren, and one-tenth to the trustee under the will of Charles E. Dickson. Exceptions filed by the surviving grandchildren were dismissed and these appeals followed.

This is the fourth occasion this Court has had to consider the will of Eliza Thaw Edwards, and the second occasion involving the above-quoted provisions.[1] Were we not bound by what has already been decided, we would be obliged to conclude that the legal effect of the language used by testatrix was the limitation of a vested remainder to the grandchildren in esse at her death, as a class, subject to open and let in after-born grandchildren. See *Bradley's Estate*, 166 Pa. 300, 31 A. 96; *Keller v. Lees*, 176 Pa. 402, 35 A. 197; *Wetherill's Estate*, 214 Pa. 150, 63 A. 406; *Bache's Estate*, 246 Pa. 276, 92 A. 304; *Overbrook Heights Building & Loan Association v. Wilson*, 333 Pa. 449, 5 A. 2d 529; 1 Simes Future Interests, Section 76 (1936); 3 Page, Wills, Section 1265 (3rd ed. 1941). However, it is evident that what present appellants are trying to do is to relitigate a question of construction decided by this Court, in *Edwards' Estate*, 255 Pa. 358, 99 A. 1010, over thirty years ago. In that case Eliza T. Edwards and Mary L. Edwards, two of the daughters, claimed the entire fund absolutely for testatrix's four daughters, contending (p. 361) that the "remainders sought to be devised by testatrix to her grandchildren are contingent and not supported by prior vested particular estates, and therefore void." This Court said (pp. 361, 362): "It is apparent, therefore, that the bequest was to the four daughters of testatrix for life, with no provision for survivorship and with remainder

---

[1] The earlier cases are: *Edwards' Estate*, 254 Pa. 159, 98 A. 879; *Edwards' Estate*, 255 Pa. 358, 99 A. 1010; *Dickson v. Edwards*, 263 Pa. 364, 106 A. 634.

to the grandchildren as a class . . . 'Ample authority is found in support of the proposition that where an estate is given to a life tenant, with remainder to the children of the life tenant, the estate vests at once upon the birth of each child, subject to open and let in after-born children, and this without regard to the question of whether or not a child survives the life tenant' . . . *In the case now before us, there were grandchildren living at the date of the death of testatrix, so that in so far as the principle referred to is concerned, the remainder became vested at once."* The character of the remainder as vested or contingent under a proper construction of the will was the pivotal question before the Court, as the case was presented, and it was squarely decided against the contentions of present appellants. The statement at the end of the opinion, "But in the present case, even if the interests of the grandchildren were contingent, they would have vested within the time limited by the rule," was an afterthought. The use of the subjunctive serves to emphasize what was actually decided, namely, that the gift in remainder vested in the grandchildren at the date of testatrix's death.

Likewise without merit is the contention of appellants that the executor and trustee of Charles E. Dickson cannot assert the claim because Dickson did not assert it in his lifetime, during his thirty-year administration as one of the co-trustees, or because Dickson, as one of the trustees, participated in the preparation of the second and third accounts, occasioned by the deaths of Eliza Thaw Edwards and Burd B. E. Dickson, in 1938 and 1944, on which decrees were entered distributing principal to the four surviving grandchildren in accordance with an agreement executed by the surviving life tenants on April 1, 1938. Manifestly Dickson's failure to claim on the prior accounts would not preclude him, and consequently does not now bar his executor and trustee, from claiming against the distinct fund for distribution on this fourth account. Until the matter has been finally determined by an appellate court, the orphans' court, on

a subsequent account involving a distinct and different fund, may always correct an error in the adjudication on a prior account: *Kline's Appeal*, 86 Pa. 363; *Reamer's Estate*, 331 Pa. 117, 120, 200 A. 35; *Laughlin's Estate*, 336 Pa. 529, 539, 9 A. 2d 383; *Kellerman's Estate*, 52 Pa. Superior Ct. 412, affirmed 242 Pa. 3, 88 A. 865. "The adjudication of a partial account simply awards distribution of the fund then in court, and is not a final determination of the rights of the parties": *Reed's Estate*, 237 Pa. 125, 131, 85 A. 138. See also *Albertson's Estate (No. 2)*, 329 Pa. 372, 198 A. 152. Nor can it seriously be contended that his participation, as co-trustee, in the preparation and filing of the prior accounts had such effect. The mere joinder, as one of the trustees, in preparation of the proposed decrees of distribution, did not purport to be, and was not, a renunciation or disclaimer of Dickson's rights as a distributee. See *Lowitz Estate*, 360 Pa. 91, 94, 61 A. 2d 342. If, as appellants argue, Dickson must have been aware of his rights and intended to renounce in favor of the four living grandchildren, children of himself and Burd B. E. Dickson, he would have joined with his wife and the other parties in interest in the agreement of 1938, expressly providing for immediate distribution to and among the surviving grandchildren upon the successive deaths of the life tenants.

While we have defined the quality of the remainders, we are not informed why inequalities in prior distributions are not corrected in the present distribution: *Reed's Estate*, supra. See also: *Albertson's Estate (No. 2)*, supra. This question is not now before us and we do not pass upon it.

The assignments of error are overruled, the decree is affirmed, the costs of each appeal to be paid by the appellant therein.